UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――――――

JILL ELIA,

                        Plaintiff,                    22-CV-9859 (JPO)

             -v-                             OPINION AND ORDER

GAZIT HORIZONS, INC.,

                        Defendant.

―――――――――――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

      Plaintiff Jill Elia ("Elia") brings this action against Defendant Gazit Horizons, Inc., ("Gazit Horizons") for violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), New York City Human Rights Law ("NYCHRL"), and for breach of contract. Gazit Horizons has moved to dismiss the complaint for failure to state a claim. For the reasons that follow, the motion is granted in part and denied in part.

**I.    Background**

      **A.    Factual Background**

      The following facts are taken from the complaint (ECF No. 1 ("Compl.")) and are assumed true for purposes of this motion to dismiss. On December 1, 2021, Elia was offered a position as a Senior Vice President at Gazit Horizons. (Compl. ¶ 7.) Pursuant to the offer letter, Elia would receive a bonus of "50% of base salary." (Compl. ¶ 9; ECF No. 11-1.)[1] Elia began

---

[1] The complaint does not specify the amount of Elia's base salary. However, Gazit Horizons has submitted a copy of the offer letter in connection with its motion to dismiss. (ECF No. 11-1.) As discussed below, there appears to be no dispute as to its accuracy. The offer letter specifies a "Salary" of "$310,000 per annum." Next to "Bonus" it states: "50% of base salary. Any additional bonus is discretionary based upon Company and employee performance."

working at Gazit Horizons on or about January 17, 2022. (Compl. ¶ 10.) On August 16, 2022, Elia had a conversation with her supervisor, Jeff Mooallem, regarding the company's transition to Miami, Florida. (Compl. ¶ 12.) In light of the transition, Mooallem offered Elia three options: (1) end her employment and receive six weeks' severance pay, (2) move to Miami to continue her employment indefinitely, or (3) continue through the end of the year in New York. (Compl. ¶ 13.) Elia informed Mooallem that she was unable to move to Miami because she is a mother and could not leave her children. (Compl. ¶ 14.) Mooallem then restricted the options to the first and third options, eliminating the option of moving to Miami. (Compl. ¶ 15.) At this time, Elia also asked whether her nondiscretionary bonus would be paid out to her, and Mooallem responded that he did not know. (Compl. ¶ 18.) On August 18, 2022, Elia informed Mooallem that she would continue her employment through the end of the year and that she expected to be paid her full compensation. (Compl. ¶ 189.) Mooallem then notified Elia that there was no guaranteed bonus of any at-will employee, that it was unlikely that she would receive a bonus, and that if she did, it would be greatly reduced from the 50% level. (Compl. ¶¶ 20-21.)

The following day, on August 19, 2022, Elia called Mooallem to discuss the issues and Mooallem "immediately shut down the conversation, becoming clearly irritated" and told Elia she would not receive any bonus. (Compl. ¶ 22.) Mooallem then seemed to renege on the offer for Elia to continue her employment and pushed her to sign a separation agreement. (Compl. ¶ 23.) On September 2, 2022, Mooallem and Lisa Freifeld, Gazit Horizons' general counsel, had a call with Elia and notified Elia that she was terminated, and that Gazit Horizons would send her the separation paperwork. (Compl. ¶ 24.) On September 16, 2022, Mooallem called Elia and was "again, clearly irritated" with Elia and told her that he was "upset she had not signed the agreement and that it was very generous." (Compl. ¶ 25.) The separation agreement would

forfeit her nondiscretionary bonus. (Compl. ¶ 26.) By the end of the call, Mooallem had "worked himself up so much" that he notified Elia that she was terminated effective immediately. (*Id.*) Following Elia's termination, Mooallem sent a letter containing false statements to employment recruiters. (Compl. ¶ 29.)

###   B.    Procedural History

Elia commenced this action on November 18, 2022. (Compl.) Gazit Horizons filed a motion to dismiss on January 25, 2023. (ECF No. 9.) Elia filed an opposition to the motion to dismiss on February 22, 2023. (ECF No. 14.) Gazit Horizons filed a reply in support of its motion to dismiss on March 1, 2023. (ECF No. 15.)

## II.    Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating whether a complaint meets these requirements, "the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

"[A] Rule 12(b)(6) motion must be resolved by looking only to the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken." *Rhee-Karn v. Burnett*, No. 13-CV-6132, 2014 WL 4494126, at *3 (S.D.N.Y. Sept. 12, 2014) (citing *Samuels v. Air Transp. Local* 504, 992 F.2d 12, 15 (2d Cir. 1993)).

### III. Discussion

#### A. Wage Theft Under the FLSA

"The FLSA statute requires payment of minimum wages and overtime wages only, *see* 29 U.S.C. §§ 201–19 (2006); therefore, the FLSA is unavailing where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (citing *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013)). "[T]he statutory language simply does not contemplate a claim for wages other than minimum or overtime wages." *Id.* at 201-02 (citing *Lundy*, 711 F.3d at 116-17).

Elia alleges that Gazit Horizons violated the FLSA through "wage theft" by not paying her a nondiscretionary bonus of 50% of her salary. Elia does not allege a claim for minimum or overtime wages. Nor does she cite a specific provision of the FLSA that Gazit Horizons violated. Because Elia has not alleged a claim for minimum or overtime wages, the Court concludes that Elia has failed to plausibly allege a claim for wage theft under the FLSA and therefore dismisses the claim.

#### B. Retaliation Under the FLSA

It is unlawful under the FLSA to "discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). FLSA retaliation claims are subject to the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Dunn v. Sederakis*, 143 F. Supp. 3d 102, 109 (S.D.N.Y. 2015) (applying this framework at the motion to dismiss stage). A prima facie case of retaliation is established by "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the

protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir.2010).

With respect to the first prong, "an employee may premise a section 215(a)(3) retaliation action on an oral complaint made to an employer, so long as . . . the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 107 (2d Cir. 2015) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).  As discussed above, because Elia did not raise a complaint for minimum or overtime wages, Elia did not assert rights protected under the FLSA. *See Dunn*, 143 F. Supp. 3d at 110-11.  The Court concludes that Elia has not adequately alleged participation in a protected activity under the first prong required to establish a prima facie case of retaliation, and therefore dismisses the claim.

C.     **Breach of Contract**[2]

"To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir.2011)).

---

[2] While the FLSA claim is the only federal claim, the complaint also asserts that there is subject matter jurisdiction under 28 U.S.C. § 1332 "as there is complete diversity [in citizenship] of parties." (Compl. ¶ 3.)  However, the complaint fails to allege that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).  This would ordinarily require dismissal of the complaint (without prejudice to filing the state law claims in state court).  Given the complaint's allegations combined with the offer letter, however, it appears evident that Elia is asserting a breach of contract claim for at least a half-year of her 50-percent-of-salary bonus — that is, one quarter of $310,000, which is $77,500, just over the jurisdictional threshold.  The Court therefore appears to have subject matter jurisdiction under Section 1332.

As to the first prong, Elia's breach of contract claim stems from the offer letter. (Compl. ¶¶ 64-69.) Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (internal quotation marks omitted) (citing *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.2006)). "However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* (internal quotation marks omitted) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.* "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). The Court is "not obliged to accept the allegations of the complaint as to how to construe such documents, but at this procedural stage, [it] should resolve any contractual ambiguities in favor of the plaintiff." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (citing *Internat'l Audiotext Network, Inc. v. AT & T Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam)). The offer letter is the document on which Elia's "complaint stands or falls" as it contains the promise of the (allegedly nondiscretionary) bonus of 50% of her salary. Moreover, there is no dispute regarding the authenticity or accuracy of the document, nor any material disputed issues of fact regarding the relevance of the document. The Court therefore concludes that the offer letter is integral to the complaint and considers it for purposes of the motion to dismiss.

The offer letter states: "Nothing contained in this letter is intended to create an employment contract and you acknowledge that upon accepting this offer, you will be employed at-will." Gazit Horizons argues that this language precludes the offer letter from creating a contract, and that therefore, Elia's breach of contract claim must be dismissed. Elia argues that "to the extent this waiver is valid, it only relates to the *duration* of [Elia]'s employment, not the terms and conditions of her employment." (ECF No. 10 at 5.)

"At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) (noting that "if a contract is ambiguous. . . , a court has insufficient data to dismiss a complaint for failure to state a claim"). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *Orlander*, 802 F.3d at 294 (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639 (1990)). "A contract is ambiguous under New York law if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* at 156-57 (citing *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (internal quotations omitted). The Court concludes that the clause is potentially ambiguous and that Elia's interpretation of the clause is at least a plausible one. For purposes of the motion to dismiss, the Court resolves contractual ambiguities in favor of Elia. The Court therefore concludes that Elia has plausibly alleged the existence of a contract.

Under the second and third prongs of the breach of contract claim, Elia must allege that she performed her end of the contract, and that Gazit Horizons did not perform its end of the contract. Gazit Horizons argues that Elia fails to allege with specificity how Gazit Horizons breached the contract, and that Elia fails to allege with specificity that Elia met the necessary conditions to receive the bonus. (ECF No. 10 at 10.) However, the terms of the offer letter do not specify the time at which, nor the conditions under which, the bonus accrues. Elia alleges that the 50-percent bonus is *non*discretionary, based on a negative implication from neighboring language of the offer letter that "[a]n *additional* bonus is *discretionary*." (ECF No. 11.1 at 2 (emphasis added).) One potential reading of this language is that the 50-percent bonus (or a portion of it) is "nondiscretionary" in the sense that it must be paid even if the employee works only a portion of a year. Again, there is potential ambiguity in the offer letter. The Court concludes that Elia has plausibly alleged the second and third prongs of a breach of contract.

Gazit Horizons makes a final argument that because Elia was an at-will employee, when Gazit Horizons changed the terms of her compensation and Elia chose to remain in her position after being advised of the change, Elia should be deemed as having accepted the new terms. Elia alleges that she did not accept the new terms of employment, and demanded the full compensation she was owed. Gazit Horizon's argument is premised on a dispute over the facts and is inappropriate at the motion to dismiss stage, at which time the Court assumes as true the facts alleged in the complaint.

Under the fourth prong, Elia sufficiently alleged damages, and Gazit Horizons does not dispute the sufficiency of this allegation. Therefore, the Court concludes that Elia has plausibly alleged a breach of contract claim.

D.     **New York Labor Law Wage Theft Claim**

Elia argues that Gazit Horizons violated NYLL § 191 for wage theft.  Under Article 6 of the NYLL, which regulates the payment of wages by employers, "executives are employees . . . except where expressly excluded."  *Pachter v. Bernard Hodes Grp., Inc.*, 541 F.3d 461, 463 (2d Cir. 2008) (citing *Pachter v. Bernard Hodes Group, Inc.*, 10 N.Y.3d 609, 616 (N.Y. 2008)).  Pursuant to NYLL § 190, which is the definitions section, a "[c]lerical and other worker' includes all employees not included in subdivisions four, five and six of this section, except any person employed in a bona fide executive, administrative or professional capacity whose earnings are in excess of nine hundred dollars a week."  NYLL § 190(7).  Elia does not argue that she falls under subsections four, five, or six, which define "manual worker," "railroad worker," and "commission salesman," respectively.  Nor does Elia dispute that she is an executive.  Because Elia is classified as an "other worker," but is an executive, Elia cannot bring a claim under NYLL § 191 for wage theft.  "[E]mployees serving in an executive, managerial or administrative capacity do not fall under section 191 of the Labor Law."  *Pachter*, 10 N.Y.3d at 616.

Furthermore, Elia does not allege unlawful wage deductions under NYLL § 193.  The Court therefore concludes that Elia has failed to plausibly allege a claim under NYLL.  That claim is therefore dismissed.

E.     **New York Labor Law Retaliation Claim**

Elia seeks to recover for retaliation in violation of New York Labor Law § 215.  Because Elia has failed to plausibly allege a claim for wage theft under NYLL as discussed above, "as a matter of law," she has not made a "complaint about a violation of NYLL."  *Hallett v. Stuart Dean Co.*, 481 F. Supp. 3d 294, 311-12 (S.D.N.Y. 2020).  The Court therefore dismisses this claim.  *Id.*

**F.     New York City Human Rights Law Claim**

Gazit Horizons moves for dismissal of Elia's NYCHRL claim on the ground that she has no viable *retaliation* claim.  That is correct.  But the complaint actually asserts a substantive *discrimination* claim under the NYCHRL, alleging that Elia was terminated because of her status as a caretaker.  The confusion arises because the complaint labels the sixth claim "Retaliation in Violation of the [NYCHRL]."  Despite the confusing label, the language of paragraphs 71 through 76 of the complaint makes is clear that the allegation is discrimination based on caretaker status.  Gazit Horizons' argument that there is no valid retaliation claim is understandable, given the mislabeling in the complaint, but it is ultimately a *non sequitur*.  It is also true that Elia barely responds to this point in her brief, stating belatedly that she "will amend her [NYCHRL] claim."  In the Preliminary Statement of her brief, however, she does state that "[t]his case also involves an illegal termination after Plaintiff raised her rights as a caregiver — a protected status under the New York City Human Rights Law." (ECF No. 14 at 1.)  The Court concludes that Elia has adequately stated a claim under the NYCHRL for discrimination based on caretaker status.

## IV. Conclusion

For the foregoing reasons, Gazit Horizon's motion to dismiss is GRANTED in part and DENIED in part.

Gazit Horizons shall file an answer to the remaining claims — *i.e.*, Elia's claims for breach of contract and discrimination based on caretaker status under the NYCHRL — within 21 days after the date of this opinion and order.

The Clerk of Court is directed to close the motion at Docket Number 9.

SO ORDERED.

Dated: September 26, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge